JOSHUA GREEN *vs.* WILLIAM FOWLER AND JOHN LEIGHTON.
*December* 1839.

A Court of Chancery will entertain jurisdiction of a bill, filed by the vendor of real estate for the sale thereof, for the payment of the purchase money, without previous proceedings at law, when the vendee does not reside in the State, and the vendor has not parted with the legal title.

APPEAL from the Court of Chancery.

On the 8th May 1839, *Joshua Green* of *Harford* county, filed his bill complaining, that on or about the 27th March 1837, he sold to the appellees a parcel of land in *Cecil* county, containing 12 acres, for $2000, as per agreement exhibited; that the cash payment of $500 was made, but the other payments now due have not been made; that the purchasers are nonresidents, and your orator has no means of obtaining the money due as aforesaid, but by resorting to his lien on the land. PRAYER, that *Fowler* and *Leighton* may answer his bill; that the lands may be sold by decree for payment of balance of purchase money; for order of publication against the non-resident defendants; and for other relief, &c.

The contract exhibited with the bill was as follows, viz:—
" We the undersigned, have this day bargained with *Joshua Green*, of and for a parcel of land, lying in *Cecil* county, supposed to contain about 12 acres, and which said *Green* has agreed to convey to us, on the payment of $2000, payable as follows: $500 down, $500 payable in six months from this date, with interest, and $1000 payable in 18 months from this date, with interest from the date hereof. Witness our hands the 27th March 1837.        WILLIAM FOWLER,
                                  JOHN LEIGHTON."

An order of publication was passed and published, and at September Term 1839, the Chancellor (BLAND,) decreed on the submission of the case by the complainant, that "it is manifest that the plaintiff has a remedy at law, and that therefore, according to the principles laid down by the Court of Appeals, this Court can have no jurisdiction in the case," and that the bill be dismissed with costs.

The complainant appealed.

The cause was submitted to BUCHANAN, C. J., ARCHER, DORSEY, CHAMBERS, J.

By OTHO SCOTT on a written argument for the appellant. The decree in this case is erroneous on two grounds:

1st. Because the complainant had no such remedy at law,

(the defendants not being residents,) as would prevent his proceeding in equity.

2nd. Because the complainant, not having parted with the legal title, but holding the same to secure the payment of the purchase money, could rightfully proceed in equity to charge the land, without first suing at law.

On the first point the bill shews a clear case. For conceding that where there is a convenient remedy at law, the party must pursue it; here he had no remedy at law, the defendants not being within the jurisdiction of any of the courts of law. It is true, an ejectment might have been brought, but it will not be contended that, that is such a legal remedy as would, preclude a party from going into Chancery; for, if it is, then a complainant holding the legal title, could never go into equity to charge the land with the purchase money. If he were first to bring his ejectment, he would of course recover the land, and there would be nothing to follow or pursue, by a bill in Chancery, on which he had a lien. It will be perceived, that such a doctrine would annihilate the remedy by bill, for a sale of lands for the payment of the purchase money.

The complainant's right to a decree on the second point, it is submitted, is equally clear. He is a vendor holding the legal title, and may readily be distinguished from one who has parted with the legal title, and claims merely the *equitable* lien against the land, while it remains with the vendee, or some volunteer, claiming under him.

The Court of Chancery in this State, has long exercised the power of selling lands charged with the payment of money. This will be seen from the language used in the act of 1773, chap. 7, where it says, speaking of lands mortgaged or held in trust, and *chargeable* with the payment of money, and therefore *liable to a decree for sale.* In *England* the remedy given to a mortgagor in equity, is a foreclosure of the equity of redemption ; a sale of the mortgaged premises is not the direct remedy. Here it is the direct object of an application to a Court of Chancery, and this too, it would appear from the act referred to before, the act of 1785, chapter 72, section 3. The

act of 1773, though not clear in its own language, evidently intended to give a right to decree sale against infants and insane persons, and from its tenor, it seems to be only giving, against persons under *disability*, the same remedy which previously existed against persons under no disability.

And if mortgagees could go into equity for a sale, no reason appears why a vendor with title might not. Their remedies at law in most cases are similar. Both could sue for the debt, or bring ejectment. To distinguish the cases however, it may be said, that a mortgage is a *legal* lien, and that in the case of a vendor with title, the lien is an *equitable* one merely. But is there such distinction? A mortgagee has no *lien at* law for his *debt*. The law. regards him as *owner* of the estate—as owner upon condition before the day of payment arrives; as absolute owner afterwards. It is in equity only that mortgages are regarded as mere securities for the payment of money. The *equity of redemption* is a creature of the Court of Chancery; it has no existence in a court of a law. It is in chancery, not at law, that a mortgagee is regarded as holding in trust for the mortgagor, after the debt is paid. The debt was not regarded at law, except so far as it made the estate conditional for a time. The payment was a condition, upon the performance or non-performance of which, the estate was either defeated altogether, or became unconditional and absolute. Equity, by looking to the mortgage as a security for a debt, gives the *lien* for the *money*, and the remedy for enforcing it, by a sale. The law gave no remedy for the debt *as money*; it only gave remedies to obtain the mortgaged premises, not the debt. Now let us see, if a vendor, who has not received the purchase money, and holds the legal title, can in respect to his legal or equitable rights, be distinguished from a mortgagee, after the mortgage is forfeited by non-payment of the debt mentioned in it. In both cases the legal estate in the land is vested in the creditor; a court of law cannot in either give any remedy, which merely charges the land with the payment of the debt. The legal remedies give the land itself, not the debt; or if remedies, not directed to the land, are resorted to, they are still

similar, being either *assumpsit*, debt or covenant, operating *in personam*, for the money due. So the cases stand at law. In equity, the vendor or mortgagee is not regarded as owner of the land, but after payment of the money, as the mere trustee of the legal estate, and before payment, as holder of the legal estate to secure the payment of the money due. The remedy too is similar in its effect. In neither case was there any direct proceeding to sell the land for the payment of the money charged upon it. In the case of a mortgage, the remedy was, to apply to the Court of Chancery to foreclose the equity of redemption; in the case of a vendor for a specific performance of the contract. The object of both proceedings was to procure for the plaintiff his debt, or the complete ownership of the lands, and this was accomplished by a conditional decree in the one case, that the equity of redemption should be foreclosed, unless the debt was paid; and in the other, that the contract should be rescinded, unless the defendant performed his part of it.

The decree in *England* for a sale to pay the debt, is a modification of the decrees adverted to; founded on the supposed assent of the parties, which by the way, the Chancellor coerces, when justice requires it, not *per directum* though, but by refusing to decree the foreclosure or rescinding of the contract, but upon the condition of an agreement for sale. Our practice is, and has been for a long period, to decree a sale without assent, in all cases involving lands charged with the payment of money, where there was power to decree either foreclosure or performance.

The similarity of the rights and remedies in the cases put, would of itself seem to justify the conclusion, that in either case the complainant might go into Chancery, without first seeking redress at law. In the case of a mortgage, it is conceded he can, and there is no distinction in principle between the case of a mortgagee, and a vendor holding the title as security for the purchase money.

There may be a very obvious distinction taken between a vendor who has conveyed, and retains nothing but a mere *equitable lien*, and one holding the title.

The former could only bring his case within that branch of Chancery jurisdiction which arises from the absence of all legal remedy, but the latter was within the jurisdiction, on the ground of *specific performance.*

It will be perceived, that in the conflict for power between common law and Chancery Courts, a mortgage could not have been embraced within the jurisdiction of equity, but for the *trust* that was supposed to be involved in it, under the name of the equity of redemption.   This a court of law could not recognize, and it was therefore turned over to the Chancellor, and when it was once brought within his jurisdiction, he modified the remedy so as to make an application for foreclosure, a proceeding for settling the accounts between the parties, and coercing by a sale of the premises, the payment of the debt due. The equity of redemption being a trust, was within the direct jurisdiction of Chancery, and not merely within that *indirect* jurisdiction resulting from there being no legal remedy; a mortgagee might proceed in equity in the first instance, without having sued at law.

So it is contended, a vendor with title may file his bill for specific performance without resorting to any of the legal remedies.   Compelling the specific performance of contracts being a branch of the Chancery jurisdiction, not dependent on or arising from the fact that legal remedies had been exhausted.

But a vendor who has conveyed, has nothing but an *equitable lien, sub modo.*   The contract of sale has been executed, there is no specific contract of sale, to execute, and therefore he could only claim the aid of a Court of Chancery on the ground, that all legal remedies had failed.

When the case is once brought within the jurisdiction, the Chancellor will give full relief to the parties, and would therefore, on a prayer of foreclosure by mortgagee, or of specific performance by vendor, direct the money due to be raised by a sale, and adjust the whole matter without sending the parties to a court of law.   To this effect are the cases in 2 *Henning & Munford,* 25, and 5 *Paige,* 240.

The rule, that when there is a remedy at law there can be

no relief in equity, is not universally true. There are many cases where the remedies are concurrent. A bill for specific performance may be filed, or covenant brought on the agreement at the election of the party. A bill to foreclose a mortgage may be resorted to, or a suit at law on the bond; and in the case of *Ridgley vs. Iglehart*, 6 *Gill & John.* 49, it is held, that on a bond for the purchase money taken under the act to direct descents, a suit at law or bill in Chancery, are concurrent remedies.

The lien being a *specific legal lien* in the latter case referred to, could not form the ground of the equity jurisdiction, for if it were a *specific equitable lien*, it is submitted, the remedy would be the same. The distinction is not perceptible. The ground of equitable interference to enforce a lien, is that a court of law, though it may in some cases give a partial remedy, cannot charge the property with the payment of the money by sale, and therefore its action is imperfect, and this holds as well in cases of equitable, as legal liens.

If indeed any reference to the doctrine of mortgages, can aid us by analogy, it will be seen that the *English* Chancellors had less difficulty in decreeing a sale of premises under an *equitable* mortgage, than a legal one. *Smith vs. Pain*, 8 *Con. Chan. Rep.* 62. *Russel vs. Russel*, 1 *Brown Chancery cases*, 269.

From what has been said it is inferred, that a vendor who holds the legal title, may proceed in equity, and though the ground of the jurisdiction may have been specific performance, as foreclosure was in mortgages, that now it is regarded as a direct remedy for the collection of the money due, by a sale of the premises, and no inconvenience to the parties, or violation of principle, can result from the different form that practice has given to the bill. The decree is still the same. In either case, the defendant by paying the debt, arrests the sale and obtains the lands disencumbered from the lien.

It is apprehended that the language of the court in the case of *Pratt vs. Van Wyck*, 6 *Gill & John.* 495, is not in collision with the doctrine here contended for. The lien there

spoken of is a merely *equitable one,* not arising by express contract, but is that implication of equity, arising from a sale and conveyance on credit, and is only to be available to the purchaser, when all other means of redress fail; then and not till then, could a court of equity claim jurisdiction.   For reasons before stated, it is broadly distinguished from the case of a vendor, who had not conveyed.   Then he could bring his case within the acknowledged jurisdiction of the Chancellor, on the ground of specific performance, and when once there, all relief would be afforded; but in the case of what is called the *vendor's lien,* after conveyance, the only ground of jurisdiction in any aspect, is the failure of legal remedies.

At this term, this court reversed the decree of the Court of Chancery dismissing the bill; and remanded the cause for further proceedings.                    DECREE REVERSED.